STATE OF CONNECTICUT *v.* HAROLD M. BERGLUND

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. SPT 14-36

Argued May 15—decided September 29, 1967

*Armand A. Korzenik,* of Hartford, for the appellant (defendant).

*Francis J. MacGregor,* assistant attorney general, for the appellee (state).

PRUYN, J.   The state welfare commissioner brought a petition for an order directing the defendant to furnish support for the defendant's mother in a state humane institution and to pay arrearages of support, pursuant to § 17-324 of the General Statutes.[1]   The defendant denied the material allegations of the petition and alleged as a special defense that his mother had wilfully deserted him continuously during the ten-year period prior to his reaching his majority and that he was not liable for her support, under § 17-326 of the General Statutes.[2] The state's reply was a general denial of the defendant's special defense.   From the judgment in favor of the state, the defendant has appealed, assigning as error the conclusions of the court and its failure to correct the finding.[3]

---

[1] "Sec. 17-324.   COURT ORDER FOR SUPPORT OF PERSONS IN HUMANE INSTITUTIONS. . . .   (a) The circuit court shall have authority to make and enforce orders for payment of support to the state welfare department, directed to the husband, wife, father, mother or child of any patient or person being supported by the state, wholly or in part, in a state humane institution, . . . as said court finds . . . to be reasonably commensurate with the financial ability of any such relative. . . ."

[2] "Sec. 17-326.   NO LIABILITY FOR SUPPORT OF DESERTING PARENT. No person shall be liable under any provision of the general statutes for the support of a parent who wilfully deserted such person continuously during the ten-year period prior to such person reaching his majority.   For the purposes of this section, wilful desertion means total neglect of parental responsibility in failing to provide reasonable support and care within the financial capability of the parent.   Any person claiming the provisions of this section as a defense shall have the burden of proof of such wilful desertion."

[3] "Sec. 17-325.   APPEAL FROM SUPPORT ORDERS.   Any party to an action brought under the provisions of section 17-324 shall have the right of appeal as in civil actions. . . ."

The facts may be briefly summarized as follows: The defendant attained his majority on October 26, 1959. For more than ten years prior thereto, his mother had not lived with him in the same household and had not furnished any maternal care and support or provided for his education; nor was there any warmth or parent-child relationship between her and the defendant. In October, 1947, the defendant's father commenced a divorce action against the defendant's mother. On April 3, 1950, the father was granted a divorce from the mother on the ground of habitual intemperance and was granted legal custody of the defendant and his brother at all times. For some eleven years prior to the decree of divorce, the defendant's mother had a long history of alcoholism, attempted suicide and narcotics addiction. She made various attempts to obtain custody of the defendant but was always denied custody by the court. At the time of the commencement of this proceeding, she was an inmate of a state humane institution. On December 12, 1963, the defendant had a fair hearing, at which he was not represented by counsel, before the commissioner of welfare. Thereafter, the defendant's income was again investigated and he received a notice of monthly billing, on the face of which was printed the following: "However, if you feel—upon careful consideration—that the rate set is not fair or legal, you may appeal to the Welfare Commissioner for a hearing." The defendant did not appeal for a fair hearing. The defendant from time to time visited his mother while she was at the institution, sent her spending money and felt sorry for her.

On this appeal, the defendant is not questioning the accuracy of the state's billing for the support of his mother or his ability to pay. The basic issue concerns the defense of desertion under § 17-326 of

the General Statutes. At the trial, the state claimed that the defendant was barred from asserting this defense because he had not pursued his administrative remedies under §§ 17-2a and 17-2b of the General Statutes.[4] To this claim the defendant expressed surprise, since the state had not pleaded it in its reply in avoidance of the defense, as required by § 128 of the Practice Book. The trial proceeded on the basis of the merits of the special defense. We deem it unnecessary to consider the questions, in essence of a procedural nature, as to whether the state could assert its claim and whether the defendant was barred from raising his defense by reason of his failure to pursue administrative remedies. In the interests of justice, we are taking the case as the parties treated it and shall consider the defense on its merits.

This defense of wilful desertion by the parent is defined in the statute as "total neglect of parental responsibility in failing to provide reasonable support and care within the financial capability of the parent."[5] The responsibility of a parent to his or her child, the father and the mother having equal responsibility, is to furnish protection, education and support. *Draus* v. *International Silver Co.,* 105 Conn. 415, 419. The word "wilful" means intentional. *Loethscher* v. *Campo,* 107 Conn. 568, 571. Wilful desertion means intentional desertion; so it has been held in connection with divorce under § 46-13 of the General Statutes. *Lindquist* v. *Lind-*

---

[4] Section 17-2a provides that a person aggrieved by a decision of the welfare commissioner may apply for a fair hearing and that the commissioner shall hold such a hearing. Section 17-2b provides that the commissioner shall render a final decision based on all the evidence and applying all provisions of law, regulations and departmental policy and that the applicant for such a hearing, if aggrieved, may appeal to the Circuit Court; on such an appeal, the findings of the commissioner as to the facts, if supported by substantial and competent evidence, shall be conclusive.

[5] See note 2 supra.

*quist,* 137 Conn. 165, 167; *Todd* v. *Todd,* 84 Conn. 591, 593. The generally accepted meaning of the word "neglect" is to omit or not to do something that should be done. *Watson* v. *Hall,* 46 Conn. 204, 206; Ballentine, Law Dictionary. It involves something more than a failure without fault. *Lathrop* v. *Lathrop,* 78 Conn. 650, 652. In determining the intent of the legislature, we may look to the words used in the statute. The dominant theme of this statute is wilful desertion; the legislature in defining it must have intended that in the phrase "total neglect" there was implied an intention to neglect. Such is the reasonable meaning of the language used. Intent is a question of fact to be proved as any other fact is proved. *McCurry* v. *McCurry,* 126 Conn. 175, 179.

The facts found indicate that the defendant's mother had a long history of alcoholism, attempted suicide and narcotics addiction, was confined in an institution, and was divorced by the defendant's father on the grounds of habitual intemperance. While she did not live with the defendant, she did attempt to obtain custody of him from time to time. Furthermore, there was no evidence as to the financial capability of the mother to provide reasonable support and care, as provided in § 17-326. From the facts found, the trial court was justified in its conclusion that there was no desertion by the mother, either in fact or under § 17-326.

There is no error.

In this opinion JACOBS, J., concurred.[6]

---

[6] This appeal was argued on May 16, 1967, before an appellate panel consisting of *Pruyn, Jacobs* and *Levine, Js.* Before the rendition of this opinion, *Levine, J.,* was appointed a judge of the Court of Common Pleas. The parties have stipulated that this appeal may be decided by *Pruyn* and *Jacobs, Js.*